**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| COMMERCE ASSOCIATES, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-01-303 EMD |
| | ) | |
| HANOVER INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: November 12, 2021
Decided: February 22, 2022

*Upon Defendant's Motion for Summary Judgment*
***DENIED***
*Upon Plaintiff's Motion for Summary Judgment on the Issue of Hanover's Duty to Defend*
***GRANTED***

Paul D. Sunshine, Esquire, Reger Rizzo & Darnell, LLP, Wilmington, Delaware, James L. Griffith, Jr., Esquire, Reger Rizzo & Darnell, LLP, Philadelphia, Pennsylvania, *Attorneys for Plaintiff Commerce Associates, LP.*

William A. Crawford, Esquire, Franklin & Prokopik, Newark, Delaware, *Attorney for Defendant Hanover Insurance Company.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a breach of contract action involving two insurance policies (the "Insurance Policies").  Defendant Hanover Insurance Company ("Hanover") issued the Insurance Policies. Plaintiff Commerce Associates, LP ("CALP") commenced this action against Hanover on January 24, 2018.[1]  CALP asserts that Hanover breached the Insurance Policies by not defending or indemnifying CALP in a lawsuit brought by Aldo Patrone (the "Underlying Litigation").  In the Underlying Litigation, Mr. Patrone sued CALP, alleging that he was injured while working

---

[1] D.I. No. 1.

on an HVAC system in a property owned by CALP.  CALP denies any negligence and further denies that its actions or inactions proximately caused Mr. Patrone's alleged injuries.  CALP asserts that Hanover has breached its obligations under the Insurance Policies by refusing to defend and indemnify CALP.  CALP filed an amended complaint for declaratory judgment on April 23, 2018.[2]

On July 16, 2021, Hanover filed Defendant's Motion for Summary Judgment (the "Hanover Motion").[3]  Hanover argues that that CALP is not an insured or additional insured under the Insurance Policies and, as such, is excluded from coverage in relation to the Underlying Litigation.  On August 13, 2021, CALP filed (i) Opposition of Plaintiff to Hanover's Motion for Summary Judgment;[4] and (ii) Plaintiff Motion for Summary Judgment on the Issue of Hanover's Duty to Defend (the "CALP Motion").[5]  On September 1, 2021, Hanover filed its Opposition to Plaintiff's Motion for Summary Judgment.[6]  The Court held a hearing on the Hanover Motion and the CALP Motion on November 12, 2021.[7]  At the conclusion of the hearing, the Court took both motions under advisement.

This is the Court's decision on the motions.  For the reasons set forth more fully below, the Hanover Motion is **DENIED** and the CALP Motion is **GRANTED**.

## II.     RELEVANT FACTS

### A.  THE PARTIES

CALP is a limited partnership formed in State of Delaware which does business at One Commerce Center, 1201 North Orange Street, Wilmington, Delaware.[8]  CALP was formed in

---

[2] D.I. No. 15.
[3] D.I. No. 56.
[4] D.I. No. 57.
[5] D.I. No. 58.
[6] D.I. No. 59.
[7] D.I. No. 60.
[8] Am. Compl. ¶ 1.

2

1981.[9] "CALP does business as Stat Office Solutions and Stat International."[10] "CALP's business is under the 'exclusive management' of its general partner, Commerce Building, Inc. (CBI)."[11] Richard Stat is the sole director, sole officer, and the chief executive officer of CBI.[12]

Hanover is an insurance company authorized to do business in the State of Delaware.[13]

### B. ONE COMMERCE CENTER

CALP acquired real property in 1981 and "caused an eleven-story commercial office building (One Commerce Center []) to be erected."[14] "In 1983 CALP, by Declaration, caused [One Commerce Center] to become a commercial condominium subject to the Delaware Unit Property Act (DUPA), 25 Del. C. § 2201 *et seq.*"[15] One Commerce Center is comprised of common elements and units.[16] There are eleven office units, "each of which fully occupies its own elevated floor in the building."[17] Governmental or commercial entities own each unit at One Commerce Center.[18] CALP owns four units which are located on floors seven, eight, nine, and ten.[19]

---

[9] Opposition of Plaintiff Commerce Associates L.P. to Hanover's Motion for Summary Judgment (hereinafter "CALP's Opp.") at 1.

[10] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶ 6; Defendant's Motion for Summary Judgment (hereinafter "Hanover's Mot."), Ex. A (Patrone Third Am. Compl.) ¶ 2.

[11] CALP's Opp. at 1 (citing CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 1-2).

[12] CALP's Opp. at 2 (citing CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 1-2).

[13] Am. Compl. ¶ 2.

[14] CALP's Opp. at 2 (citing CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 7-9; Ex. 5; Ex. 6 (One Commerce Center Declaration) at Sched. 2.2).

[15] CALP's Opp. at 2 (citing CALP's Opp., Ex. 6 (One Commerce Center Declaration)). Hanover argues that this assertion is "contrary to the facts and the exhibits submitted by CALP" and that the argument is beyond the scope of Hanover's Motion and as such, should be struck by the Court. Defendant's Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Hanover's Opp.") at 2, fn. 6.

[16] CALP's Opp., Ex. 6 (One Commerce Center Declaration) § 5 and Sched. 5.1 and 5.2.

[17] *Id.*

[18] *See* Hanover's Mot., Ex. D at 30, #4.

[19] *Id.*

## C. THE CONDOMINIUM COUNCIL

The One Commerce Center Code of Regulations (the "Code of Regulations") governs administration and management of the One Commerce Center.[20]  The Code of Regulations set forth the rights and duties of the condominium owners, including CALP, and One Commerce Center Condominium Council (the "Council").[21]  Relevant to the present matters, the Code of Regulations provide:

### ARTICLE IV

### ELECTION OF COUNCIL MEMBERS, TERM AND LIABILITY

**4.1 Number, Qualification, and Compensation**
…
**4.1.2  Elected by Unit Owners.** After the Organizational meeting there shall be as many members of Council as there are unit owners each of whom shall be appointed as a member of Council by the respective unit owner.

**4.1.3  Qualification.**  All Council members shall be either residents of the of the State of Delaware or unit owners, or duly elected officers or general partners of unit owners, and shall be bondable.  A newly elected Council member shall qualify for office by attending the annual meeting of the Council.[22]
…

**4.5 Liability of Council Members**

**4.5.1  Disclosed Agents.** The status of Council members in exercising their powers as established under the Declaration, Code of Regulations, Rules of Conduct, and the Delaware Unit Property Act, all as amended from time to time, shall be that, and solely that, of disclosed agent. . . .[23]

CALP became a member of the Council in 1983 and as owner of four units has about 37% of the voting power.[24]

---

[20] Am. Compl. ¶ 4.
[21] *Id.*
[22] CALP's Opp., Ex. 7 (hereinafter "Code of Regulations") at 10.
[23] *Id.* at 12.
[24] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 11-12. *See also* CALP's Opp., Ex. 6 (One Commerce Center Declaration) at Sched. 5.3.

4

### D. OWNERSHIP AND MAINTENANCE OF HVAC COMPONENTS

The Council has exclusive maintenance and repair responsibility of commonly owned HVAC components.[25] The commonly owned HVAC components include "[a]ny mechanical units which service either all units or the Common Elements, such as central cooling tower, boiler, common circulating pumps, pipes or wires up to branch line service."[26] However, "[a]ll HVAC equipment and all pipes, wires, ducts and cables which service only one Unit are part of that Unit, wherever same are located."[27]

The Code of Regulations allows unit-owners to ask the Council to arrange for maintenance of unit HVAC components.[28] The Code of Regulations section 7.3.2 "Unit Maintenance by Council" states:

> Notwithstanding that all cleaning, repairs, maintenance, and replacements required in connection with any unit exclusive of common elements shall be the responsibility of the various unit owners, the Council may, at its option, undertake to arrange for cleaning, repairs, maintenance, and replacements which are the unit owner's responsibility if the unit owner so requests and deposits with the Council in advance an amount of money estimated by the Council as being sufficient to meet the cost of the work to be done. Any excess will be refunded, and any deficiency will be assessed, to the unit owner. . . .[29]

Since 1991, at the request of CALP and the unit owners, the Council agreed to arrange for maintenance of the building's 62 unit-owned heat pumps and on all common HVAC equipment.[30] The Council prepared budgets showing the cost of payments to heat pump

---

[25] Code of Regulations at 17-20, §§ 7.1.1 – 7.2.2.
[26] CALP's Opp., Ex. 6 (One Commerce Center Declaration) at Sched. 5.2.
[27] *Id.* at Sched. 5.1.
[28] Code of Regulations at 21-22, § 7.3.2.
[29] *Id.*
[30] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶ 13; CALP's Opp., Ex. 8 (1991 and 1992 Council Meeting Minutes) at CALP HAN 00159 and 00165. *See also* CALP's Opp., Ex. 11 (showing Council's payments to HVAC vendors dating back to 2001).

maintenance vendors.[31]  Each unit owner paid annual dues and fees, part of which paid for the heat pump maintenance vendors.[32]

The Council hired Builders & Managers, Inc. ("BMI") to manage the property and directed BMI to arrange the heat pump maintenance services.[33]  Linda Grund was a BMI employee who served as "General Manager" for the Council, "Center Manager" for CALP d/b/a "Stat Office Solutions," and performed other functions for BMI.[34]  Ms. Grund was not a member of the Council.[35]  "Ms. Grund was authorized to sign contracts with HVAC vendors to provide heat pump maintenance."[36]  DVL Group, Inc. ("DVL") provided heat pump maintenance for One Commerce Center during the 2016-2017 period, the period in which the alleged accident with Mr. Patrone occurred.[37]  "Ms. Grund signed the contracts with DVL."[38]

### E. THE HANOVER INSURANCE POLICIES

The Council was the named insured in the Insurance Policies—a commercial insurance policy and an umbrella liability policy issued by Hanover.[39]  Hanover issued a Commercial General Liability policy to insured "One Commerce Center," a partnership, for the policy period 7/15/2016 – 7/15/2017.[40]  The Policy Declarations designate the business as "CONDOMINIUM" and "CONDO ASSN: COMM'L-OFFICE OCC INCL CTRS."[41]  The Commercial General

---

[31] CALP's Opp., Ex. 9; CALP's Opp., Ex. 10.
[32] *Id.*
[33] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 16, 23; CALP's Opp., Ex. 13(a and b); CALP's Opp. Ex. 9; CALP's Opp., Ex. 10.
[34] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 17-18.
[35] *Id.*
[36] *Id.* ¶ 19; *See* CALP's Opp., Ex. 14 and Ex. 15 at the signature pages.
[37] CALP's Opp., Ex. 14; CALP's Opp., Ex. 15.
[38] CALP's Opp. at 6 (citing CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶ 20; CALP's Opp., Exs. 14, 15). Further, CALP notes that Ms. Grund assigned these contracts CALP's tax identification number and not the Councils. *Compare* CALP's Opp., Ex. 14 and Ex. 15 *with* CALP's Opp., Ex. 16.
[39] Am. Compl. ¶ 5. The two insurance policies were designated as follows: the commercial insurance policy was Policy No. OHQ-A985296 and the umbrella policy was Policy No. OHQ-A985296-00. *Id.*
[40] Hanover's Mot., Ex. C (hereinafter "The Policies") at 16.
[41] *Id.* at 17.

6

Liability policy had liability limits of $1,000,000 per occurrence subject to a $2,000,000 aggregate.[42] The policy also provides Umbrella limits of $2,000,000 per claim and $2,000,000 aggregate limits.[43]

Under the Commercial General Liability policy, the Businessowners Coverage Form, 391-1003 06/09, states:

> **SECTION II - LIABIILTY**
> **A.** Coverages
> **1. Business Liability**
>     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>        But:
>       **(1)** The amount we will pay for damages is limited as described in **Paragraph D – Liability and Medical Expenses Limits of Insurance in SECTION II – LIABILITY;** and
>       **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.
>       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Paragraph f. Coverage Extension – Supplementary Payments.**[44]
> . . .
>
> **C. Who Is An Insured**
> **1.** If you are designated in the Declaration as:
> . . .
>     b.  A partnership or joint venture, you are insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.[45]

---

[42] *Id.* at 16.
[43] *Id.* at 16, 23.
[44] *Id.* at 18.
[45] *Id.* at 19-20.

7

The Commercial Liability Umbrella Policy, provides the following with respect to coverages:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>> **1. Insuring Agreement**
>>> a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:
>>> (1) The amount we will pay for the "ultimate net loss" is limited as described in **Section III – Limits of Insurance**; and
>>> (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.
>>> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** or **B**.[46]

## F. THE UNDERLYING LITIGATION

Mr. Patrone and Madelyn Patrone (the "Patrones") sued CALP for injuries that Mr. Patrone allegedly sustained on February 27, 2017, while working as an HVAC mechanic on the ninth floor of 1201 North Orange Street, Wilmington, Delaware (the "Premises").[47] The Patrones filed the original complaint on August 7, 2017.[48]

---

[46] *Id.* at 24.
[47] Am. Compl. ¶ 8 (citing Ex. A (Complaint in *Patrone v. Commerce Associates, LP, et al,* filed in the Superior Court of Delaware, C.A. No. N17C-08-086 EMD)).
[48] CALP's Opp., Ex. 17 (Copy of the Complaint in the Underlying Litigation).

The Patrones filed the Third Amended Complaint on February 22, 2019.[49]  In the Third Amended Complaint, the Patrones allege that Mr. Patrone was a business invitee performing preventive maintenance on a Bosch Water Source heat pump when Mr. Patrone came into contact with unmarked electrical wires.[50]  Upon contact, Mr. Patrone "was caused to be shocked an electrocuted and fell with force and violence off of a six foot ladder onto the ground" causing Mr. Patrone to sustain personal injuries.[51]  CALP denies that it was negligent in any respect and further denies that its actions or inactions proximately caused Mr. Patrone's injuries.[52]  CALP has tendered the defense of the Underlying Litigation to Hanover.

## G. THE PRESENT LITIGATION

In the present litigation CALP filed for declaratory judgment against Hanover.[53]  CALP argues that it was insured by Hanover and that Hanover breached its obligations under the Insurance Policies by refusing CALP's tender of defense in the Underlying Litigation.  Further, because of Hanover's breach, CALP claims that it has incurred damages, and will continue to incur damages, including attorneys' fees, costs of litigation, and notwithstanding its denial of negligence and proximate cause, could potentially be held liable for the alleged damages of Mr. Patrone.[54]

The Hanover Motion was filed on July 16, 2021.[55]  Hanover argues that CALP is not an Insured or additional insured and as such is excluded from coverage in relation to the Underlying Litigation.  CALP opposes the Hanover Motion.[56]  In the CALP Motion, CALP moved for

---

[49] Hanover's Mot., Ex. A (Patrone Third Am. Compl.).
[50] Hanover's Mot. at 2-3 (citing Ex. A (Patrone Third Am. Compl.) ¶¶ 9-10).
[51] *Id*.
[52] Am. Compl. ¶ 10.
[53] D.I. No. 15.
[54] Am. Comp. ¶ 13.
[55] D.I. No. 56.
[56] D.I. No. 57.

summary judgment on Hanover's duty to defend.[57]  On September 1, 2021, Hanover filed its opposition to the CALP Motion.[58]  The Court held a hearing on both motions on November 12, 2021.[59]

### III.    PARTIES' CONTENTIONS

#### A.  THE HANOVER MOTION

In the Hanover Motion, Hanover argues that CALP is not an Insured or additional Insured as defined in the Insurance Policies and, as such, is excluded from coverage in relation to the Underlying Litigation.  Further, Hanover asserts that it has no duty to indemnify or reimburse CALP for defense costs given that CALP is excluded from coverage.

CALP opposes the Hanover Motion and argues that it is entitled to a defense by Hanover because it is an Insured under the Insurance Policies.  CALP argues it is an Insured because it is a member of the Council, and it is being sued for acts undertaken in pursuit of council business.

#### B.  THE CALP MOTION

CALP has moved for summary judgment on the issue of Hanover's duty to defend CALP in the Underlying Litigation.  CALP incorporates and relies on the arguments made in its opposition to the Hanover Motion.  CALP asks the Court to (i) grant judgment on the issue of duty to defend, and (ii) declare that Hanover is obligated to pay CALP's attorneys' fees and costs incurred in connection with the defense of the Underlying Litigation.

Hanover argues that CALP is not a member of the Council because CALP is not listed as a member and therefore CALP is not an Insured.  Further, Hanover argues that CALP has failed

---

[57] D.I. No. 58.
[58] D.I. No. 59.
[59] D.I. No. 60.

to provide any evidence of contracts or agreements requiring the Council provide coverage to CALP or to list CALP as an additional insured.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[60] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[61] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[62]

The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[63] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate factfinder.[64]

## V. DISCUSSION

Hanover has moved for summary judgment on the duty to defend, indemnify and reimburse defense costs. CALP has moved for summary judgment on the duty to defend and asks the Court to award attorneys' fees and costs incurred in connection the defense of the

---

[60] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[61] *Id.*
[62] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[63] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[64] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

11

Underlying Litigation. Both motions require the Court to rule on the extent of Hanover's obligation to defend in the Underlying Litigation. Neither party has made arguments beyond whether CALP is an Insured under the Insurance Policies. Therefore, the Court's finding on whether CALP is an Insured as defined in the Insurance Policies, will determine if CALP is entitled to coverage, including the duty to defend.

## A. INSURANCE INTERPRETATION PRINCIPLES

Insurance policies are contracts.[65] The interpretation of contractual language, including in insurance policies, "is a question of law."[66] The principles governing the interpretation of an insurance contract are well-settled. In attempting to resolve a dispute over the proper interpretation of an insurance policy, "a court should first seek to determine the parties' intent from the language of the insurance contract itself."[67]

In reviewing the terms of an insurance policy, the Court considers "the reasonable expectations of the insured at the time of entering into the contract to see if the policy terms are ambiguous or conflicting, contain a hidden trap or pitfall, or if the fine print takes away that which has been provided by the large print."[68] Ambiguity exists when the disputed term "is

[65] *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *7 (Del. Super. Feb. 2, 2021) (citation omitted).

[66] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001); *see Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018) ("Whether [a] contract's material terms are sufficiently definite [is] mostly, if not entirely, a question of law." (citation omitted)); *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1232 (Del. 2017) (same).

[67] *Alstrin v. St. Paul Mercury Ins. Co.,* 179 F. Supp. 2d 376, 388 (D. Del. 2002); *see also Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 745 (Del. 1997) ("The scope of an insurance policy's coverage . . . is prescribed by the language of the policy.") (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195–96 (Del. 1992); Playtex FP, Inc. v. Columbia Cas. Co.,* 622 A.2d 1074, 1076–77 (Del. Super. 1992) (citing *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (Del. 1985)); *Kaiser Aluminum Corp. v. Matheson,* 681 A.2d 392, 395 (Del. 1996).

[68] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.,* 1996 WL 111205, at *2 (Del. Super. Jan. 30, 1996) (citation omitted); *see Steigler v. Ins. Co. of N. Am.,* 384 A.2d 398, 401 (Del. 1978) ("[A]n insurance contract should be read to accord with the reasonable expectations of the purchaser so far as the language will permit.") (quoting *State Farm Mut. Auto. Ins. Co. v. Johnson,* 320 A.2d 345, 345 (Del. 1974) (internal quotation marks omitted)).

fairly or reasonably susceptible to more than one meaning."[69]  Absent any ambiguity, contract

terms should be accorded their plain, ordinary meaning.[70]  If an insurance policy contains an

ambiguous term, then the policy is to be construed in favor of the insured to further the contract's

purpose and against the insurer, as the insurer drafts the policy and controls coverage.[71]

When determining an insurer's duty to defend a claim asserted against an insured, the

Court will look to the allegations in the underlying complaint to decide whether the action

against the policy holder states a claim covered by the policy.[72]  Generally, an insurer's duty to

defend is broader than its duty to indemnify an insured.[73]  An insurer has a duty to defend where

the factual allegations in the underlying complaint potentially support a covered claim.[74]  The

insurer will have a duty to indemnify only when the facts in that claim are actually established.[75]

The Court generally will look to two documents in its determination of the insurer's duty

to defend: the insurance policy and the pleadings of the underlying lawsuit.[76]  The duty to defend

---

[69] *Alta Berkeley VIC. V. v. Omneon, Inc.,* 41 A.3d 381, 385 (Del. 2012).

[70] *See id.*; *see also Goggin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2018 WL 6266195, at *4 (Del. Super. Nov. 30, 2018); *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413694, at *7 (Del. Super. Jan. 31, 2019).

[71] *See Alstrin*, 179 F. Supp. 2d at 390 ("Generally speaking, however, Delaware . . . courts continue to strictly construe ambiguities within insurance contracts against the insurer and in favor of the insured in situations where the insurer drafted the language that is being interpreted regardless of whether the insured is a large sophisticated company.") (citations omitted); *Nat'l Union Fire Ins. Co. v. Rhone–Poulenc Basic Chems. Co*., 1992 WL 22690, at *8 (Del. Super. Jan. 16, 1992) ("Application of the [*contra proferentem*] doctrine turns not on the size or sophistication of the insured, but rather on the fact that the policy language at issue is drafted by the insurer and is not negotiated." (citation omitted)).

[72] *Am. Ins. Group v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 829 (Del. 2000) ("The rationale underlying this principle is that the determination of whether a party has a duty to defend should be made at the outset of the case, both to provide the insured with a defense at the beginning of the litigation and to permit the insurer, as the defraying entity, to control the defense strategy.").

[73] *Liggett Group, Inc. v. Ace Property and Cas. Ins. Co.*, 798 A.2d 1024, 1030 (Del. 2002).

[74] *DynCorp v. Certain Underwriters at Lloyd's, London*, 2009 WL 3764971, at *3 (Del. Super. Nov. 9, 2009).

[75] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197 (Del. 2009) ("'As a general rule, 'decisions about indemnity should be postponed until the underlying liability has been established'' because a declaration as to the duty to indemnify 'may have no real-world impact if no liability arises in the underlying litigation.'") (quoting *Molex Inc. v. Wyler*, 334 F.Supp.2d 1083, 1087 (N.D. Ill. 2004)).

[76] *Virtual Business Enterprises, LLC v. Maryland Cas. Co.*, 2010 WL 1427409, at *4 (Del. Super. Apr. 9, 2010).

arises where the insured can show that the underlying complaint, read as a whole, alleges a risk potentially within the coverage of the policy.[77]

## B. CALP IS AN INSURED

Hanover argues that CALP is not an "Insured" as defined by the applicable policies and as such, is excluded from any coverage afforded by those policies. Further, Hanover asserts that it has no duty to defend the insured against any lawsuit "to which this insurance does not apply."[78] Hanover argues that there is no evidence of any contracts or other agreements requiring One Commerce to provide coverage to CALP or to list CALP as an additional insured on the Insurance Policies.

CALP argues that it is an Insured under the policy that Hanover issued to the Council and that the policy obligates Hanover to defend CALP in the Underlying Litigation.[79] CALP asserts that all doubt and ambiguity in the underlying pleadings should be resolved against Hanover.[80] Further, CALP alleges that CALP is a member or partner of the Council and was acting with respect to the conduct of the Council's business.[81]

The Declaration designates "One Commerce Center" a partnership, for the policy period 7/15/2016 – 7/15/2017.[82] The Policy Declarations designate the business as "CONDOMINIUM" and "CONDO ASSN: COMM'L-OFFICE OCC INCL CTRS."[83] Both CALP and Hanover agree that the Council is the named Insured. The parties disagree whether CALP is an Insured pursuant to its partnership or membership of the Council. Section C regarding who is an Insured states that "[i]f you are designated in the Declaration as: . . . A partnership or joint venture, you

---

[77] *Cont'l Cas. Co. v. Alexis I. duPont Sch. Dist.*, 317 A.2d 101, 103 (Del. 1974).
[78] Hanover's Mot. at 10 (citing The Policies at 18).
[79] CALP's Opp. at 10.
[80] *Id.* (citing *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1255 (Del. 2008)).
[81] *Id.*
[82] The Policies at 16.
[83] *Id.* at 17.

are insured.  Your members, your partners and their spouses are also insureds, but only with *respect to the conduct of your business.*[84]  Given these terms, the Court must rule on: (1) whether CALP is a member or partner of the Council and (2) whether CALP was acting with respect to the conduct of the Council's business.

### i.       *CALP is a member of the Council*

Hanover contends that the Council is designated in the Declarations as a partnership. However, Hanover argues that there is no evidence in the record that supports CALP's assertion it is a member of the Council.[85]  Further, Hanover asserts that only the terms of the Code of Regulations set forth the requirements for qualification to be a member of the Council and the Code does not automatically make a unit owner a member of the Council.[86]

CALP argues that at all relevant times, CALP was a member of the Council and the owner of several floors of the Premises.[87]  CALP cites to DUPA's definition of a council to support the argument "that a Council member can be a business entity unit owner that it is represented by a natural individual."[88]  CALP also refers to the Code of Regulations Section 4.1.3 which specifies the qualification for Council members as "either residents of the of the State of Delaware or unit owners, or duly elected officers or general partners of unit owners, and shall be bondable."[89]  Further, the Code of Regulations notes that "[a] newly elected Council member shall qualify for office by attending the annual meeting of the Council."[90]  CALP asserts that Richard Stat is the duly elected and sole director of the corporate general partner of CALP

---

[84] *Id.* at 19-20 (emphasis added).
[85] Hanover's Mot. at 11. Hanover asserts that CALP's argument that it is a member of the Council by virtue of its ownership interest in the building and therefore is an insured pursuant to the "Who Is An Insured" clause in the Policy's Businessowners' Coverage Form is unsubstantiated. *Id.*
[86] *Id.* at 12.
[87] Am. Compl. ¶ 3.
[88] CALP's Opp. at 11.
[89] *Id.* (citing Code of Regulations at 10).
[90] *Id.*

15

and as such he has the exclusive ability to act for CALP. CALP contends that Richard Stat's presence on the Council as the only individual person authorized to manage and act for CALP is compelling and persuasive evidence that CALP is a Council member.

CALP also claims that the Patrones characterize CALP as a member of the Council in their pleadings because they identify CALP as the Council's agent. CALP notes that the Code of Regulations states that "[t]he status of Council members in exercising their powers . . . shall be that, and solely that, of disclosed agents."[91] In the Underlying Litigation, the Patrones state that CALP is the Council's agent, and CALP argues that such allegations alone are sufficient to identify CALP as a member for purposes of the duty to defend.[92]

The Court finds that CALP is a member of the Council. CALP's arguments are persuasive. Hanover has not asserted any arguments to contradict CALP's membership beyond the claim that Richard Stat is listed as a member of the Council and not CALP, and the argument that the terms of the Code of Regulations do not "automatically turn a unit owner into a member of the Council."[93] The Court need not find that the Code of Regulations automatically turns a unit owner into a member of the Council. Instead, the Court finds that the historical documentation supports the finding that CALP, through Richard Stat, is a member of the Council.

As delineated in the Code of Regulations Section 4.1.2, each unit owner appoints a member to the Council.[94] CALP owns four units which are located on floors seven, eight, nine, and ten.[95] CALP's business is under the 'exclusive management' of its general partner, CBI, and

---

[91] Code of Regulations, § 4.5.1.
[92] CALP's Opp. at 12.
[93] Hanover's Opp. at 3.
[94] Code of Regulations at 10, § 4.1.2.
[95] *See* Hanover's Mot., Ex. D at 30, #4.

16

Richard Stat is the sole director, sole officer, and chief executive officer of CBI.[96] CALP

became a member of the Council in 1983 and, as owner of four units, has about 37% of the

voting power.[97]

The Council's meeting minutes from December 9, 2015, support the notion that Richard

Stat was acting on behalf of CALP. The meeting minutes read in part "Council Owners are

represented by Rich Heffron (1&2), Michael Scali (3), Mel Monzack (4), David Williams (5&6),

Richard Stat (7-10) and Jason Danner (11)."[98] The numbers next to Richard Stat's name indicate

that he is the representative on the Council for the owners of the units on floors 7 through 10.

Further, the meeting minutes proceed by stating "[t]hese owners elected the following

individuals as council members for 2016: . . . Richard Stat (7-10)."[99] The Court finds that these

undisputed facts along with those presented by CALP are persuasive and establish that CALP is

a member of the Council and is represented on the Council by Richard Stat.

### ii. CALP is sued with respect to the conduct of the Council's business

For CALP to qualify as an Insured, CALP must have been sued in the Underlying

Litigation with respect to the conduct of the Council's business.[100]

Hanover asserts that because the HVAC pump serviced by Mr. Patrone was located

within CALP's individual unit, its maintenance was CALP's responsibility and not the

Council.[101] Hanover argues that while a unit owner may request the Council arrange for

---

[96] CALP's Opp. at 1-2 (citing CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 1-2).
[97] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 11-12. *See also* CALP's Opp., Ex. 6 (One Commerce Center Declaration) at Sched. 5.3.
[98] CALP's Opp., Ex. 13(a) at CALP_HAN_00227.
[99] *Id.*
[100] *See* The Policies at 19-20.
[101] Hanover's Mot. at 13.

17

maintenance which is the unit owner's responsibility, CALP has not provided evidence to establish that it made such a request.[102]

Hanover argues that Ms. Grund executed the contract for the service of the heat pump on behalf of the "customer" and Ms. Grund is not listed as a 2017 member of the Council.[103] Further, Hanover asserts that there is no evidence of CALP making an advance deposit with the Council to accompany any request as required under Section 7.3.2 of the Code of Regulations.[104]

CALP contends that it is clear on its face that a Council member is conducting Council's business.[105] CALP begins its argument by noting that the Court should construe the policy language "with respect to the conduct of [the Council's] business" broadly.[106] CALP notes that the purpose behind "the conduct of the business" language is to avoid misuse by members and partners of the Insured to cover unrelated commercial or personal risks, and not to eliminate coverage where the claim arises from an ordinary function of the Insured.[107]

Here, CALP argues that it has been sued "with respect to the conduct of [the Council's business]" because the Council has arranged for maintenance services for the heat pumps that belong to the unit owners for years.[108] Further, CALP asserts that as a member of the Council, it took part in the authorization and approval of the Council's business in this regard.[109]

The Court finds Hanover's argument about Ms. Grund not being listed as a member of the Council to be unconvincing. Ms. Grund was authorized to sign contracts with HVAC vendors to provide heat pump maintenance and signed the relevant contract with DVL pursuant

---

[102] *Id.* at 14.
[103] *Id.*
[104] *Id.*
[105] CALP's Opp. at 12.
[106] *Id.* at 13 (citing *Pac. Ins. Co.*, 956 A.2d at 1256-57 (concluding that a phrase in an insurance policy "arising out of" is to be given a broad meaning)).
[107] *Id.*
[108] *Id.* at 13-14; The Policies at 20.
[109] CALP's Opp. at 14.

to her responsibilities as General Manager for the Council.[110] Additionally, CALP has presented sufficient evidence to establish that it, and all unit owners, pre-paid annual dues and fees, part of which paid for the heat pump maintenance vendors.[111]

An insurer's duty to defend is generally broader than its duty to indemnify.[112] An insurer has a duty to defend where the factual allegations in the underlying complaint potentially support a covered claim.[113] Here, CALP argues that it "need not establish [that] every theory in the [underlying] complaint falls under the scope of the Policy . . . [it] only need[s] to establish one to be entitled to a defense."[114]

At the time of the alleged injury, Mr. Patrone was performing work pursuant to a contract which his employer, DLV, had made with the Council.[115] Further, pursuant to the Code of Regulations, the Council was authorized to contract with DVL to perform maintenance and repair services and the Council had arranged for HVAC services to be regularly performed for years on individual units.[116] In their Third Amended Complaint, the Patrones allege that CALP acted as agent of the Council specifically with respect to the maintenance contract at issue.[117] Given these facts, the Court finds that CALP was sued with respect to the conduct of the Council's business and is an Insured.

The Court finds that CALP is an Insured and is being sued with respect to the conduct of the Council's business. Hanover has not presented any further argument that CALP is not

---

[110] CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶¶ 17-19; *See* CALP's Opp., Ex. 14 and Ex. 15 at the signature pages.
[111] CALP's Opp., Ex. 9; CALP's Opp., Ex. 10.
[112] *Liggett Group, Inc. v. Ace Property and Cas. Ins. Co.*, 798 A.2d 1024, 1030 (Del. 2002).
[113] *DynCorp v. Certain Underwriters at Lloyd's, London*, 2009 WL 3764971, at *3 (Del. Super. Nov. 9, 2009).
[114] CALP's Opp., at 15 (citing *Pac. Ins. Co.*, 856 A.2d at 1255).
[115] *See* CALP's Opp., Ex. 14 and Ex. 15 (listing 62 heat pumps to be serviced by DVL).
[116] Code of Regulations at 21-22, § 7.3.2. *See* CALP's Opp., Ex. 21 (Affidavit of Richard Stat) ¶ 13; CALP's Opp., Ex. 8 (1991 and 1992 Council Meeting Minutes) at CALP HAN 00159 and 00165. *See also* CALP's Opp., Ex. 11 (showing Council's payments to HVAC vendors dating back to 2001).
[117] Hanover's Mot., Ex. A (Patrone Third Am. Compl.).

entitled to the duty to defend. As such, it is not necessary for the Court to engage in further analysis and the Hanover Motion is denied and the CALP Motion is granted.[118]

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Hanover Motion and **GRANTS** the CALP Motion.

Dated: February 22, 2022
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[118] The Court grants CALP's Motion but is not going to set a payment schedule as CALP requests in its Motion. The Insurance Policies control as to how defense costs should be reimbursed, advanced or otherwise paid.

20